33 F.3d 53
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Moe ROBINSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Murrell JOHNSON, a/k/a rock, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfreda ROBINSON, Defendant-Appellant.
 Nos. 92-5690, 92-5698, 92-5727.
 United States Court of Appeals, Fourth Circuit.
 Argued June 9, 1994.
Decided Aug. 17, 1994.
 
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 
 
 1
 Antonio Gioia, Porter & Gioia, Baltimore, MD, for appellant David Robinson.
 
 
 2
 Brian Joseph Murphy, Stanley H. Needleman Law Offices, Baltimore, MD, for appellant Alfreda Robinson.
 
 
 3
 Daniel Tisdale, Baltimore, MD, for appellant Johnson.
 
 
 4
 Andrea L. Smith, Asst. U.S. Atty., Office of the United States Attorney, Baltimore, MD, for appellee.
 
 
 5
 Jeffrey C. Hines, Baltimore, MD, for appellant Johnson.
 
 
 6
 Gary P. Jordan, U.S. Atty., Office of the United States Attorney, Baltimore, MD, for appellee.
 
 OPINION
 PER CURIAM:
 
 7
 David Moe Robinson, hereinafter Robinson, his mother Alfreda Robinson, and Anthony Murrell Johnson were convicted of conspiring to distribute and to possess with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C.A. Sec. 846 (West Supp.1994).[1] They appeal, challenging their convictions and sentences. Finding the allegations of error raised by Robinson and Johnson to be without merit, we affirm their convictions and sentences. Likewise, we conclude that the challenge to Alfreda Robinson's conviction lacks merit and affirm her conviction. However, because the district court erred in failing to make specific findings of fact to support the quantity of drugs attributed to her for sentencing purposes, we vacate her sentence and remand for resentencing.
 
 I.
 
 8
 Viewed in the light most favorable to the Government, the evidence showed the following. Robinson would acquire cocaine and cocaine base in New York City for redistribution in Baltimore. He was arrested after an undercover officer, Officer Pennington, arranged to purchase cocaine from Jesse Staton, a suspected drug dealer, on December 3, 1991 in the parking lot of a local restaurant. One of the officers surveilling the transaction, Officer Phillips, saw Staton arrive and speak with Officer Pennington. Staton left and returned approximately 20 minutes later. When he returned, the vehicle that he was driving was followed closely by another vehicle which was driven by Robinson. Robinson drove into the lot behind Staton's vehicle and parked just a few spaces away. Because Officer Phillips knew of the impending drug transaction and the practice of having armed companions provide cover from nearby vehicles, he surmised that the second vehicle was a cover vehicle. When Officer Pennington signalled the other officers to arrest Staton, Officer Phillips approached the cover vehicle and ordered Robinson to exit. He conducted a protective frisk and removed a loaded handgun from Robinson's waistband. Robinson was arrested at that time.
 
 
 9
 Robinson moved to suppress the firearm, arguing that Officer Phillips lacked reasonable suspicion for the initial stop and frisk. The district court denied Robinson's motion, concluding that because Robinson appeared to be the cover for a suspect who was returning to a designated area to consummate a planned drug sale, Officer Phillips had reasonable suspicion to believe that Robinson might be armed and engaged in criminal activity.
 
 
 10
 The evidence offered by the Government against Alfreda Robinson demonstrated her participation in the conspiracy. Following Robinson's arrest, Alfreda Robinson assisted her son in collecting a drug debt by making several threatening telephone calls to the mother of Demetrious Howard, one of Robinson's teenage distributors. After Howard's mother contacted law enforcement authorities for assistance, the Drug Enforcement Agency provided her with identified bills with which to pay Alfreda Robinson. Agents subsequently found the identified currency in a safe in the basement of Alfreda Robinson's home. Moreover, a letter introduced at trial indicated that Alfreda Robinson collected this debt knowing that her son was involved in drug distribution. While incarcerated for a prior offense, Robinson sent a letter to his mother apologizing for being robbed of $10,000, promising to be a more careful drug dealer, and asking her for one more chance. Additionally, evidence that Alfreda Robinson had purchased four vehicles and eight firearms in a period of just a few years, despite having no discernable source of income, created a strong inference that she not only knew about and participated in the conspiracy but also profited from it.
 
 
 11
 The evidence presented by the Government also established Johnson's involvement in the conspiracy. Detective Tom White and Howard testified that Johnson assisted Robinson in the sale of drugs and the collection of drug proceeds. Detective White testified that on one occasion he met Robinson and Johnson in a parking lot. After Johnson exited Robinson's vehicle, he delivered a quantity of cocaine base to Detective White and accepted his payment. Johnson counted the money and gave Detective White a pager number and code for arranging future purchases. Similarly, Howard testified that he was fronted drugs by Johnson and Robinson on numerous occasions, receiving the drugs from and presenting payment to each of them. During one such transaction, Johnson, who was armed with a sawed off shotgun, accepted and counted Howard's payment before delivering it to Robinson.
 
 II.
 
 12
 Robinson challenges his conviction for use of a firearm during the commission of a drug trafficking offense in December 1991, claiming that the district court erred in denying his motion to suppress the handgun seized by Officer Phillips at the scene of the drug transaction involving Jesse Staton. Robinson contends that the facts known to Officer Phillips were insufficient to establish a reasonable suspicion that Robinson was involved in criminal activity and, therefore, that the stop and frisk violated the Fourth Amendment. We disagree.
 
 
 13
 The Fourth Amendment, which applies to states through the Fourteenth Amendment, provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Although the Fourth Amendment requires probable cause for an arrest, an officer may make an investigatory stop if he has reasonable suspicion, based upon articulable facts, that an individual may be engaged in or is about to become involved in illegal activity. Terry v. Ohio, 392 U.S. 1, 21-22 (1968). When making such an investigatory stop, an officer may also conduct a protective search for weapons if "he has reason to believe that he is dealing with an armed and dangerous individual." Id. at 27. While the factual findings underlying a denial of a motion to suppress are reviewed for clear error, the ultimate determination of whether an investigatory stop violated the Fourth Amendment is reviewed de novo. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992).
 
 
 14
 The parties do not dispute the facts relied on by the district court in denying Robinson's motion to suppress. Instead, Robinson simply contends that he had not done anything illegal or that would have indicated to Officer Phillips that he had been or was about to be engaged in criminal activity. While it is true that Robinson was merely sitting in his vehicle, he had arrived following closely behind the vehicle driven by Staton, an individual who was about to distribute cocaine to an undercover officer. Instead of entering the restau rant, Robinson remained in his vehicle, which was parked just a few spaces away from Staton. Given Officer Phillips' knowledge of the impending drug transaction and his familiarity with the use of cover vehicles, we conclude that he possessed a reasonable suspicion based upon articulable facts that Robinson was engaged in criminal activity and might be armed. Therefore, the district court did not err in denying Robinson's motion to suppress the firearm seized.
 
 III.
 A.
 
 15
 Alfreda Robinson contends that the district court erred in admitting a letter written to her by her son while he was incarcerated for a prior offense. In the letter, Robinson wrote to his mother:
 
 
 16
 Ever since the day I got robbed for the ten thousand dollars, I have done nothing but think. What could I have done to avoid it. Never keep money with product.... Never trust anyone in the business.... I have also learned about respect for my family in the business. Never bring people around you. Never have product with you.... Mother, I'm asking you to understand me and give me one more chance.
 
 
 17
 Alfreda Robinson asserts that because the letter was written prior to the dates of the conspiracy charged in the indictment, the letter was not admissible as a coconspirator statement made "during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E); see United States v. Urbanik, 801 F.2d 692, 697 (4th Cir.1986). We conclude that this argument is without merit. Because the letter was offered to prove Alfreda Robinson's knowledge of the conspiracy, not the truth of any assertions contained in the letter, it was not hearsay. See Fed.R.Evid. 801(c). Therefore, the letter did not have to qualify for admission under Rule 801(d)(2)(E).
 
 B.
 
 18
 Alfreda Robinson also claims that the district court erred in failing to make findings of fact to support its sentencing of her on the basis of 5 to 15 kilograms of cocaine. The presentence report (PSR) attributed at least 500 grams but less than 1.5 kilograms of cocaine base to Alfreda Robinson and recommended a base offense level of 36.[2] See United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1(c)(4) (Nov.1991). The PSR also recommended a two-level firearms enhancement pursuant to U.S.S.G. Sec. 2D1.1(b)(1), placing Alfreda Robinson at offense level 38. That offense level, when coupled with her Criminal History Category I, produced a sentencing range of 235-293 months imprisonment. She objected to the recommended base offense level, contending that she could not have foreseen the quantity of drugs attributed to her in the PSR.
 
 
 19
 The sentencing judge characterized a sentence of 235-293 months imprisonment as "extraordinarily high" and indicated that he was attempting to find a way to sentence her to as low a sentence as he could impose in good conscience. The district court rejected the findings of fact recommended in the PSR and simply selected offense level 32, finding that 5 to 15 kilograms of cocaine was foreseeable. Application of offense level 32 produced a sentencing range of 121-151 months.[3] The district court sentenced Alfreda Robinson to 121 months imprisonment. She now complains that the court failed to offer an explanation of how it arrived at this quantity or enunciate any basis for its finding.
 
 
 20
 It is readily apparent from our review of the sentencing colloquy that the district court proceeded backward, determining the sentence it wished to impose and then selecting an offense level and manipulating adjustments to accomplish that goal. In doing so, the district court failed to articulate a basis for its finding of the quantity of drugs foreseeable to Alfreda Robinson. Accordingly, we must vacate her sen tence and remand for resentencing.[4] See United States v. Jackson, 983 F.2d 757, 771-72 (7th Cir.1993); see also United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991).
 
 IV.
 
 21
 We have carefully reviewed the other allegations of error presented and find them to be without merit. We therefore affirm the convictions and sentences of both David Moe Robinson and Anthony Murrell Johnson. In addition, we affirm the conviction of Alfreda Augusta Robinson. However, we vacate her sentence and remand for resentencing.
 
 AFFIRMED IN PART, VACATED AND REMANDED IN PART
 
 
 [1]
 David Moe Robinson was also convicted of possession with the intent to distribute cocaine base, 21 U.S.C.A. Sec. 841(a)(1) (West 1981), use of a firearm during the commission of a drug trafficking offense on April 24, 1991, 18 U.S.C.A. Sec. 924(c) (West Supp.1994), distribution of cocaine base, 21 U.S.C.A. Sec. 841(a)(1), use of a firearm during the commission of a drug trafficking offense on December 3, 1991, 18 U.S.C.A. Sec. 924(c), possession of a firearm by a convicted felon, 18 U.S.C.A. Sec. 922(g) (West Supp.1994), and use of an interstate communications facility during the commission of a drug trafficking offense, 21 U.S.C.A. Sec. 843(b) (West 1981). Johnson was also convicted of distribution of cocaine base, 21 U.S.C.A. Sec. 841(a)
 
 
 [2]
 Although the PSR attributed a quantity of cocaine base as foreseeable to Alfreda Robinson, the sentencing colloquy ultimately addressed the amount of cocaine powder foreseeable to her
 
 
 [3]
 The district court enhanced her offense level by 2 levels under U.S.S.G. Sec. 2D1.1(b)(1), but reduced her offense level by 2 levels for acceptance of responsibility under U.S.S.G. Sec. 3E1.1 despite the fact that Alfreda Robinson contested her factual guilt at trial, see U.S.S.G. Sec. 3E1.1, comment. (n.2)
 
 
 [4]
 While we agree with Alfreda Robinson that the district court must articulate a basis for its finding of the quantity of drugs foreseeable to her, our decision to remand should not be read as an indication that we believe the record would not support a finding that would place her in an offense level of 32 or greater. Rather, we simply remand at her urging for the district court to make explicit findings of fact